Before we turn to our next cases, we want to welcome the Garland Walker Inn of Court members who are here with us, and also of course welcome the members of the public and council and parties. Thank you very much. We are about to hear case number 2018-40491, Courtney Morgan v. Mary Chapman and John Kopach. Thank you, Your Honor, and may it please the Court, Bill Davis for the appellants. This case involves putative claims under Section 1983 for malicious prosecution and abusive process predicated on alleged violations of the Fourth Amendment. I'd like to start, if I could, by explaining why those claims are neither cognizable nor facially plausible, then turn to qualified immunity, and finally to absolute immunity. So on the first point, the question of whether a plaintiff may pursue a malicious prosecution theory under Section 1983 has been a point of contention and confusion in the federal courts for decades. But in 2003, this Court brought clarity to that subject in its en banc decision in Castagnano v. Fregoso. And in that case, the Court explained that a plaintiff who wants to proceed on that type of theory just has to allege and prove constitutional violations, and that the malicious prosecution label only invites confusion. Now, of course, a couple of— Is the label just inviting confusion here? Because really what's being alleged are regular Fourth Amendment claims as part of the malicious— Well, certainly there are not any longer freestanding Fourth Amendment claims in this case. And if I could point the Court to page 404 of the record, this is Morgan's response to Chapman's motion to dismiss the operative complaint. He says that the plaintiff made claims for 1983 malicious prosecution grounded in Fourth Amendment. The defendant's characterization of plaintiff's claims, the plaintiff did not make a separate independent claim for unreasonable search and seizure. Well, once again, isn't that a labeling issue? The claims are grounded in the Fourth Amendment, but they're related to his prosecution, much like the Winfrey case. No, I would say there are no longer freestanding claims. As the district court recognized in this order, the only claims that were left were malicious prosecution and abusive process. Now, it's true that there are Fourth Amendment allegations throughout the complaint, but most— That's the whole theme of the complaint, isn't it? Yes. Well, the theme of the complaint is unreasonable premises searches and property seizures. And if there's one thing that's clear in the law of malicious prosecution, it's that only a seizure of the person, a detention, can be relevant to that type of theory. So the district court's focus on premises searches is beside the point. We have to look at the complaints allegations, if any, of seizures of the person that could be relevant. And there are two contenders. The first is the allegation that during one of the premises searches, Morgan was detained in an exam room for over 40 minutes. The problem with that claim is that it predated the start of legal process. And under Wallace v. Cato, that means it's a false arrest claim. And it's time barred for the same reasons that the initial freestanding Fourth Amendment claims are time barred. Now, we can't consider time barred, can we? That's correct, Your Honor, and you don't need to. All you need to recognize is that allegation, because it predates the start of legal process, could only support a false arrest claim. Okay. What about the detention that arose because he's arrested based upon the alleged falsified materials that I think Ms. Chapman gave to the officer? Right. That's the other contender. The allegation that Morgan was physically arrested after the indictment issued. So that's after the start of legal process. The problem with that, though, is that Morgan doesn't allege that that arrest violated the Fourth Amendment. And even assuming it did, he doesn't allege that Kopach's or Chapman, the only two defendants here, played any role in the arrest. Well, I thought he does in that he says that she gave false information, that she knew was false, about the quantities of the drugs and that sort of thing. Isn't that part of the, am I making this up or is that, am I correct that that's what he says? That's not a Fourth Amendment violation. A Fourth Amendment seizure is taking someone into custody. Right, but she caused him to be taken into custody based upon false, she presented falsified information to the law enforcement in order to egg them on to arrest the person. That's the whole crux of the claim. And that, Your Honor, is a malicious prosecution claim. And in Castellano, the court said, no, there is no such claim. You look to the constitutional violation. And here, the constitutional violation doesn't fit that theory. Well, is it more accurate, correct me if I'm wrong, is it more accurate to say that Castellano said there is no Fourth Amendment malicious prosecution claim per se? There is no such thing? I think that's part of what Castellano said. Did it? And then the second part of my question is, I mean, and I think that's fair reading of Castellano, but didn't it also say, didn't it also leave open the possibility of a due process-based malicious prosecution claim based on something like fabricated evidence? Well, I think it left open the possibility of a freestanding constitutional claim of whatever sort. And the question would be, was that a timely claim? It rejected the overlay of malicious prosecution for timeliness purposes. And we see the Supreme Court in Manuel v. Joliet doing the same thing, and Justice Alito explaining why nothing like the malicious prosecution can credibly fit within the Fourth Amendment. That's a point that then-Judge Gorsuch made in what, in our view, is a very thoughtful opinion in Cordova v. City of Albuquerque. He wrote concurring in the judgment in that opinion. But then we said in Winfrey that this type of thing where you're fabricating reports is the type of thing that is cognizable. I think Your Honor has identified some tension within this court's precedent both before and, unfortunately, after Castellano. There are panel opinions of this court. So for example, Rodriguez v. Rutter. That came out years after Castellano. It cited a pre-Castellano opinion saying, to bring a malicious prosecution claim under 1983, you have to look to the state court elements. Well, that's flatly contrary to what the court said in Castellano. That was a marker that laid down the law for subsequent panels to follow, and it controls under the rule of orderliness. Well, so you're trying to say in a roundabout way that you think that Winfrey doesn't follow the rule of orderliness and we can't follow it here. Yes. If we have to follow Winfrey because we think it's within the rule of orderliness and we're trying to follow the rule of orderliness ourselves, then do you lose today? I don't know. I would have to look at Winfrey again, I guess, but to see if it could be distinguished. In our view, it is contrary to Castellano, and that en banc opinion controls. Okay, so what if there is this gap, this thing for due process, and that's part of process, to not falsify information? Well, first of all, I don't think there's any dispute that a falsification of evidence claim can be brought under the due process clause. But in this case, that didn't happen. There's never been a suggestion that there's a 14th Amendment due process claim until this appeal. And the only references in the operative complaint to the 14th Amendment are tied directly to the 4th, indicating that the 14th Amendment is cited here only because defendants are state officials and the 14th Amendment is the vehicle through which the protections of the 4th were incorporated against the state. I mean, is this just a rose is a rose by any other name? Because they do cite the 4th and the 14th, and they do cite the factual basis for the claims that there's falsified evidence. And whether or not you consider that freestanding 4th, or you consider it tucked under malicious prosecution as part of due process, it's still the claim that a falsified evidence to lead to the arrest. And that's, it's, you know, we have to look at the actual allegations and not their labels, don't we? Well, the plaintiff cites cases about notice pleading. But it's one thing to have a complaint that cites facts and doesn't specifically tie it to a legal theory or cite 1983 expressly. It's very different when the... What I'm saying is what they did was they didn't have a complaint that merely put forth facts and said under some legal theory when. They specified the legal theories. And they said from the very outset of the case, at the outset it was 4th Amendment claims that were freestanding. Then those were dropped in response to a limitations defense. But there was never any suggestion that there was a 14th Amendment claim. Let me ask you about them very specifically about part of their 2nd Amendment complaint. That's the operative complaint, right? That's correct. So in paragraph 70 of the factual recitations, it says this. This is page 325 of the record. Chapman was the lead investigator in Morgan's TMB case. She knowingly and deliberately compiled an inaccurate report tabulating all prescriptions issued for controlled substances by Morgan, et cetera, et cetera. And then knowingly and deliberately did not consider or include those portions of the records in her report. I read that as saying that there is at least alleged some kind of fabrication of evidence component to their claim. Now, I agree with you in terms. This complaint never says this is a fabricated evidence due process claim under the 14th Amendment. It doesn't say that at all. It doesn't even suggest it. But that allegation is in there. So what are we to do with that? Well, if there had been a 14th Amendment claim, and also the district court order never says the words due process. The complaint never says those words. But if there had been, I think we would have responded differently. We would have addressed that claim head on. And under qualified immunity, we would have raised the circuit split on whether a fabrication of evidence due process claim requires the criminal defendant to have been convicted. One of the cases there is from the Fourth Circuit, Massey v. Ojanit, 759 F. 3rd, 343, 354 from 2014. That's one of several cases that say without a conviction, there is no such claim. So, I mean, what I hear you saying is that the briefing below that led to the dismiss on qualified immunity grounds didn't even sort of join issue on this point. That's right. What we said, I believe, in Chapman's motion to dismiss was based on the allegations, this is a Fourth Amendment claim. And under Graham v. Conner, you can't use the substantive due process framework to displace that more specific constitutional right. And that's, of course, what we're saying here. We're holding the plaintiff to what he alleged. If he alleged something different, we would have responded differently. But the district court gave the plaintiff plenty of opportunity to amend. And on the last instance, he said, okay, one more time, one more complaint, no new claims, no new parties. And so it's not as though the plaintiff didn't have an opportunity to develop a claim that it could have put in the complaint. It didn't. We probably need to talk about abusive process, don't you think? Abusive process. Thank you, Your Honor. So on cognizability of that, we have a case from this court in 1978, Beaker Phosphate, suggesting that there might be a circumstance in which in 1983 it could be used to advance that claim for egregious violation of rights of a constitutional dimension. But the court didn't specify what constitutional dimension that was. Other circuits have reached a whole spectrum of results on this from saying that all you have to do is show the state law tort elements all the way to, no, no, there's no such thing under 1983 as abusive process. The 11th Circuit in Harvey v. Harvey read this court's decision in Beaker to say that there is no such claim. But even assuming that that's not a dispositive problem for Morgan on that allegations don't fit with that theory. The theory of abusive process is that process was legitimately initiated, but then later misused. So, for example, someone is lawfully arrested, but a prosecutor detains that person in jail and tries to extort money from him. Those aren't the allegations here. The allegations are that all of the process was illegitimate, and there aren't allegations of negotiation or extortion, which are elements that this are necessary to the claim. Is it your position that the use of the instanter subpoena in this case was appropriate process? I think we would be hard-pressed to argue that given the factual similarities between this case and Zeta v. Robinson and the panel opinion. And the Katropia? That's correct. But, again, those allegations of the premises searches can't go to the theories that were alleged here. They could go in the freestanding fourth if that's still viable. If the complaint had retained a freestanding fourth amendment claim, they could. Well, maybe it does, because it still has everything that's in there. And you said that we're confusing people about our malicious prosecution jurisprudence by saying, you know, by Winfrey and that sort of thing. Is Winfrey really about a freestanding fourth amendment claim? Your Honor, I think that in this case, on this record, it's absolutely clear that the plaintiff dropped the freestanding fourth amendment claims. And that's made most clear by page 404 of the record. But why would they drop their most viable claims? Because of their time bar. Would they all be time barred? All of the freestanding fourth amendment claims, I think, as Your Honor recognized, timeliness is not within this court's jurisdiction here. But I'm not aware of a claim for that type of violation. Well, I think we should give you each five more minutes, because you haven't even talked about immunity yet. So each side gets five more minutes. Thank you, Your Honor. I mean, I thought that it was a time bar issue about why they repackaged their claim, frankly. Because any freestanding fourth amendment claim, when would that have accrued? Well, if we're talking about the premises searches, it would have accrued roughly three years before the original complaint was filed. Yeah, so barred. But then Winfrey says there's a different accrual date for a different kind of claim, right? Right. Winfrey reaches back into the pre-Costagnino law on malicious prosecution and says, yeah, you get the benefit of the state law tort accrual period. But that doesn't survive Costagnino. But it's after Costagnino. And it's inconsistent with it, and so it doesn't control. And there are opinions after Costagnino that get it right. And so all we're saying is that the court should follow the rule of order. We don't actually have the power to do what you're asking us to do. We can't say that our opinion is inconsistent with our other opinion, and therefore we're not going to follow it unless we're sitting on bonk, can we? Well, no, Your Honor. The rule of orderliness is designed for this. If there are, and it arises fairly frequently, that there are inconsistencies in panel opinions, and the court looks to the earliest opinion. No, but we don't enforce against others if there's any possibility. That's not our job to enforce against other panels. It's a self-enforcing mechanism. Well, if Your Honor is suggesting we need to go on bonk with this case, I suppose that would be a possibility. I did not mean to get us off on this. I'm sorry. I know that Judge Elrod wants to hear about qualified immunity, and so please address that. So on qualified immunity, the court is well aware of the two-step process. On the first prong, there's no clearly established right against malicious prosecution or abuse of process. That's a constitutional right. And the analysis stops there. If you get to the clearly established analysis on page 38. Why is there no clearly established? I mean, it's clearly established that you're not supposed to cause an investigation based upon falsified information. And I'm thinking about certainly not absolute immunity under Hoog-Watson, where the DA is on the premises directing the seizure of the animal. You know, Hoog-Watson. I'm not aware of that case. Okay. Do you actually believe you have absolute immunity, your client? Well, if you want me to jump to absolute immunity, that applies if you reject everything else that we've briefed and you credit the allegation as facially plausible that Chapman initiated the prosecution. And we have to do that. I mean, assuming you don't win on your other points, we have to credit as facially plausible that she took the stuff. If we are in that position, initiation of prosecution is a prosecutorial function. We have held in Hoog-Watson that if you're doing the investigation and gathering the information and leading the seizure, you are not absolutely immune. What I'm saying is the component of the claim that goes to the initiation of prosecution is protected by absolute immunity. So are the witness statements. They're protected by witness immunity, which is a component of absolute immunity. I'm not saying that's a complete defense to all the allegations because, again, we're holding the plaintiff to what the allegations are and what the claims are. And... You know, the district court didn't really grapple with these immunity issues. Should we perhaps remand the case to the district court for the district court, if the case survives, for the district court to grapple with these issues in the first instance? No, Your Honor, because... Wouldn't that be what we would normally do when there's not a record on something? Well, I mean, the district court did address qualified immunity and said there was presumably clearly established law on... I mean, the district court. This is the entirety of the analysis. This conduct presumably violated clearly established state and federal law. C, paren, state court findings and conclusions. Close, paren. That's it. You said it for me, Your Honor. But that seems to me that we would say we require under our new rules and things that they're supposed to articulate reasons and that we ask them to articulate reasons and then we'll have a proper record to review that on. After everybody gives their best arguments there on the... I'm sorry. Why isn't that the right answer in this case? Because Morgan has had his chance to allege claims that are viable in an operative complaint and we've responded with motions to dismiss raising all of the theories that I've discussed today. Whose burden was it to show qualified immunity once you raised it? Well, it's Morgan's burden to show clearly established law and here that has to be malicious prosecution and abusive process. I see my time has again expired. Okay, thank you. You've saved some time for rebuttal. Thank you. Yes. If it pleases the court, I'm Tommy Swate along with my co-counsel Erica Chaplin whose I have the privilege and honor to represent Dr. Morgan. Well, it's been established since probably 1959 that fabrication of evidence is clearly a violation of due process. Did you plead this? Did you plead your case that it was a violation of due process? Assuming argument that we agree with you that it's a violation of due process to fabricate evidence, is that in your pleading? The pleadings have inadequacies and under Johnson v. City of Shelby, Mississippi, we do not have to plead a perfect legal argument. Now, our legal arguments are not perfect but under a 12B6 motion, our burden is to produce enough factual evidence to show our client if the factual evidence is true is entitled to relief. I'm not going to sit and argue that our theories were perfectly expressed. They were not. However, we did plead the Fourth Amendment and the Fourteenth Amendment. Now, under the Fourteenth Amendment due process, fabrication of evidence would be a violation of the Constitution. But more clearly, Dr. Morgan's Fourth Amendment rights were violated and the way they were violated was when he was physically arrested based on no probable cause because the affidavit was fabricated. There's no argument that they didn't fabricate the report. Mr. Davis was pretty adamant and emphatic. He said, quote, there are no longer any freestanding Fourth Amendment claims in this case. And then he said, it is absolutely clear the plaintiffs dropped their freestanding Fourth Amendment claims. Well, obviously I would disagree with that. At first, in the complaint initially it says we're bringing these allegations under the Fourth and Fourteenth Amendment. Then there's a hundred or so factual allegations, factual allegations 66, 68, 70, 84, 103, 104, 105, where it says physically arrested. That starts the Fourth Amendment violation. He was physically arrested based on no probable cause. That's a constitutional violation. So that is in part his Fourth Amendment violation. But more interestingly, from the start, I believe July 18, 2013, when they came into Dr. Morgan's office, clearly violated his Fourth Amendment rights. No question about that. Well, this kept going. The July 18 event wasn't a discrete event. It was an ongoing event because after they obtained the records in violation of the Fourth Amendment, the other defendant comes to Ms. Chapman and says, okay, give me your records and give me your report. Ongoing. Then the other defendant takes the report from Ms. Chapman, takes it to the DA and says, look, we've got a third degree felony here because he's violating the Payne Clinic regulation. So it was ongoing. Since it was ongoing, the statute wouldn't start running, in my opinion, until after the case was dismissed. And we're not dealing with the statute of limitations today. I understand we're not dealing with the statute of limitations. So the state court threw this out, the criminal proceedings, and did it make findings that these things had actually occurred? I know that it determined that the searches were all bad and that the laws had been violated, but are there findings that she fabricated or any of that sort of thing? You don't have to have that at 12B, but I'm just... I don't think there was a specific finding that she had fabricated her report. I don't believe that. There was sort of a general allegations that Ms. Chapman was not reliable and the judge was incensed over what had happened. Just so I understand... The answer to your question is no, I don't think, at least in my memory, I don't think there was a specific finding of fabrication. I just want to understand what you're talking about. We are talking about the state court's findings that the district judge, in this case, made a part of its ruling on qualified immunity, right? I mean, he just block quoted, I don't know if it was all of them, but it's like four pages of the state court findings, and that's the only basis that I can see for the district court's qualified immunity ruling. You follow me? Yes, yes. That's what we're talking about. Oh, okay, I'm sorry. And so I think what Judge Elrod is asking, and I'll ask it even if she's not, which is, is there any finding of fabrication of evidence in those state court findings? I don't believe so. Okay. What do we do with the fact that there is not a robust discussion of the qualified immunity issue in the district court? Normally the district court would have to explain what the violation was and then how it was clearly established. We give all that. Do you have cases today that tell us that this was clearly established, or are you saying you need to go back to the district court, or what is your situation on that? The qualified immunity on fabrication of evidence is clearly established. The qualified immunity on coming into an office and enforcing an administrative subpoena is clearly established. Having someone arrested based on fabricated evidence I would say is clearly established. So those three allegations are clearly established and well known. Do you think that you're, well, it seems that your problem here today might be whether or not you conceded away all of your Fourth Amendment claims. That might be a problem you have here today. Would you like to address that? I wouldn't agree with that because under the 12B6 motion, again, repeating myself, all we're required to do is have factual allegations that would indicate we could succeed. The complaint, the second amended complaint, says they're bringing this cause under the Fourth and Fourteenth Amendments. They did not go with each factual allegation, firm that out, where they would say, okay, we had the arrest, we had the fabricated evidence, no probable cause, Fourth Amendment violation. They didn't do that, or fabrication of evidence, violation of the Fourteenth Amendment. They didn't specifically, in doing the complaint, say that. But I would say under Johnson v. City of Shelby in Mississippi, it wasn't required to. In a 12B6 hearing, I think my understanding is that all that's required is to have at least plausible facts that would indicate if it's true, you have a right for relief. But we're here on a qualified immunity question, right? Yes. On denial of a motion dismissed based on qualified immunity. Right. Now, I guess enlighten me on the briefing on that motion to dismiss, whether or not the case should be dismissed on qualified immunity. Did the briefing discuss whether prosecution based on fabricated evidence was clearly established? Yes. A case, I believe, was quoted Brown v. Miller. In fact, I... I'm talking about in the lower court. I'm guessing, I'm just asking, were you all arguing about this issue in the briefing? Brown v. Miller, Fifth Circuit case, 2008, 519L3D231. The Fifth Circuit found deliberately annoying creation of a misleading and scientifically inaccurate serology report amounted to a violation of defendants' due process rights. And that was the case relied on? You relied on that in the district court? That case about due process? Did you rely on that? I just know what was in the pleadings that I have now. I wasn't at the district court. Okay. So we'll have to check the record. Thank you. Do you have anything else you want to talk about, sir? No. Well, a couple things. One, absolute immunity. Ms. Chapman wasn't a prosecutor. She was an investigator, so that doesn't follow. We've discussed the factual allegations, the 12B6 hearing. The answer to that is I yield back my time and ask the court to affirm the decision of the district court. Thank you, counsel. We have your argument. I don't want to take your time, but I want to ask something. What is the current position on the instanter? I know the law has changed, but has that been challenged as violating because it's truly an administrative subpoena and it's not a closely regulated industry and all of that? So are they doing instanters now because of the change in the law and has that always been challenged? So my understanding is they still do them. They're doing them still. They didn't stop for a while? In a small number of cases. Oh, your time is not supposed to be. No, it's fine. Your time is not running.  Okay. Go ahead. Thank you, Your Honor. So, yes, but as Your Honor noted, statute has changed and the regulations have changed. Well, I'll make sure. Don't worry. I'll make sure on the back end you get plenty of your time. Thank you. But my question, but has that been challenged because you're not aware of any current challenges, but they are going forward with these instanter subpoenas? Under the new statute and the new rules, I believe they're going forward with them in some cases, and I'm not aware of a challenge. Okay. But you understand what I mean by a challenge because if they're truly administrative subpoenas, they can't be instanter because it's not in the history and tradition and all of that. Certainly, and I think the Texas legislature has been understanding of what this court has said about that procedure. I think that's partly why we saw the change in the statute. Counsel, I have a question about the seizure. The person, the people were seized at the site, right? They were put in a closet or something while this search was going on. Is that right? Well, let me just say what the allegation is because that's where we are right now. The allegation is that Morgan was detained in an exam room at one of his practices for more than 40 minutes while the search was ongoing. Right. He's kept in this room. And then his phone, which is not part of the subpoena, is taken from him. There is an allegation that things that were not part of the subpoena on the face of the subpoena were also seized, just like in Katropia and some of these other cases where there's these allegations that they're seizing far more than what they're supposed to be seizing, and you're aware of that, right? Those are the allegations, yes. Okay. Why wouldn't his phone be a thing of value under the abuse of process, the idea that you take something? They took things that they wouldn't be allowed to have otherwise, even with the proper process.  Well, as I understand the tort of abuse of process, it goes to process, meaning after a warrant has issued and the legal case is underway, process is misused at that point. So the extortion example that I gave earlier, I wouldn't understand the tort to go to that type of factual scenario. I would think that would be a straight-up Fourth Amendment claim. So even if they seize other things of value and take them, unless they're taking them to pocket them, then it wouldn't be an abuse of process issue? I'm not aware of a case law that would put it in that framework. Okay. Your time is going to run now. Okay. Thank you, Your Honor. Maybe it would, but, again, there would be a Fourth Amendment remedy there. It just needs to be timely brought. So my lead point in rebuttal is the claims in the complaint matter. What the plaintiff alleges, if I could point the court to footnote 2 of Wallace v. Cato, the majority opinion says, assuming without deciding that such a claim is cognizable under Section 1983, and that, by the way, is a malicious prosecution claim, petitioner has not made one. Petitioner did not include such a claim in his complaint. He, in fact, abandoned a state law malicious prosecution claim and stated, in opposition to a motion for summary judgment, that plaintiff does not seek to raise a malicious prosecution claim under Section 1983. That's exactly the type of analysis we're asking this court to apply. Look to what the complaint alleges and hold the plaintiff to those claims. That's the only approach that would be fair to the defendants and allow them to present the appropriate defense. Are the defendants similarly situated? Well, one of them is a board agent and one of them is a DPS officer. Right. The board agent's the one who allegedly did all of the bad acts, right? And the DPS agent took the materials to do what they normally would do, according to this. I'm just curious why they're similarly situated, and you represent them both, so I'm just curious. That's right. The allegations are they both were bad actors here, of course, and we take those allegations as true. What are his bad acts? As I remember the complaint's allegations as to COPAX, it was taking the investigative file and sending it on to the district attorney and suggesting that a criminal proceeding ensue. Does it say he knew that it was a bad file and he knowingly sent a bad file? Or does it he's an innocent victim that he's just sent in the file that he thinks this is a government agency and they're giving me this file? Your Honor, I would have to look back at the complaint. I hesitate to say that the complaint paints one of the defendants as an innocent bystander, but obviously if the court were to take that view of the complaint, then that COPAX would not be liable. As to whether there was a freestanding Fourth Amendment claim, I would again point the court to page 404 of the record and the history of the amendments of the complaints, ending with the operative complaint that didn't address that. And the arrest allegation stands out when you compare it to the other allegations. The allegation of a physical arrest doesn't say that that arrest violated the Constitution. And every other allegation that the plaintiff has pointed to as to the property, the premises searches, has alleged a Fourth Amendment violation. And one possibility we don't know from the complaint because it doesn't explain, is that Morgan voluntarily surrendered to the arrest warrant. And we know from this court's decision last year in McGlynn v. Ard that the law wasn't clearly established until last year that voluntary surrender to an arrest warrant violated the Fourth Amendment. Quick question on your absolute immunity argument, Estime, as is Chapman. Opposing counsel says that it sure seems that she was acting more in an investigative function than a prosecutorial function, and therefore immunity is misplaced. And why is he wrong? Well, as I mentioned before, the absolute immunity argument would be at the end of the analysis of everything. Are you saying that's not your best argument? That's right. And I don't think it's a complete argument because it goes to functions within the judicial process. And so it doesn't cover investigatory work. And the question is whether a valid claim was alleged as to that investigatory conduct, and it wasn't for the reasons that I've already noted. One other thing, just to highlight on page, and this goes to qualified immunity, page 38 of our opening brief cites decisions from the First, the Eighth, and the D.C. circuits that have all said because the law wasn't clearly established on malicious prosecution, qualified immunity applies. And that same analysis also goes to the abuse of process allegations. Do you agree that the law was clearly established under 14th Amendment due process that you couldn't falsify reports at the time? As long as that resulted in a conviction, yes. I think if you take out the conviction piece of it, you're in a circuit split. If there are no further questions? But not just held in custody? Because if you're held in custody, do you have to have a conviction if you're held? Well, there's no allegation that he was held in custody except with respect to the premises searches. But that was well before the start of the legal process. He didn't go to jail for a little while? No. There's no allegation of that. Okay. I thought he got arrested. No. He was arrested, but there's no indication that he was detained or that he did anything but voluntarily surrender to that. The only detention allegation is on the day of the searches, 40 minutes in the exam room. That's a false arrest claim. Thank you. That's helpful. Thank you, Your Honors. We have your argument.